[No. 10785. Department Two. April 15, 1913.]

THE CITY OF SEATTLE, *Appellant*, v. J. S. GOLDSMITH, *Respondent*.[1]

WEIGHTS AND MEASURES—POWER TO REGULATE. It is within the general police power of a city to legislate upon the subject of weights and measures to prevent frauds.

SAME—POWER TO REGULATE—DELEGATION OF POWERS. Const., art. 11, § 10, permitting cities to frame their own charters, and Id., art. 11, § 11, providing that any city may make and enforce all such local police regulations as are not in conflict with the constitution and general laws, delegates to the city police power to legislate upon the subject of weights and measures to prevent frauds.

[1]Reported in 131 Pac. 456.

SAME—POWER TO REGULATE—IMPLIED POWER. The power to require the true weight or measure to be stated on the container is fairly implied in and incident to the power conferred by Rem. & Bal. Code, § 7507, subd. 16, to "provide for the weighing, measuring and inspection of all articles of food and drink."

MUNICIPAL CORPORATIONS — ORDINANCES — SUBJECTS AND TITLES. Provisions in an ordinance regulating weights and measures requiring the true weight or measure to be stated on the container, are within the title "relating to weighing, measuring and inspecting all commodities sold . . . to enforce the keeping of proper legal weights and measures . . ." etc.

SAME—REGULATIONS—REASONABLENESS. An ordinance requiring the true weight or measure to be stated on the container is not unreasonable in that the true weight at the time of packing is more than the true weight after loss by evaporation; since it merely throws the loss upon the packer instead of the consumer.

Appeal from a judgment of the superior court for King county, Main, J., entered February 18, 1912, dismissing a prosecution for the violation of an ordinance relating to weights and measures, upon sustaining a demurrer to the information. Reversed.

*James E. Bradford* and *Ralph S. Pierce*, for appellant.

*Preston & Thorgrimson*, for respondent.

MORRIS, J.—This appeal submits the validity of an ordinance of the appellant, requiring the true net weight or measure of commodities sold in containers to be stamped or printed on the container. The ordinance is attacked, (1) as not within the power of the city; (2) that the submitted provision is not within the title; and (3) that the provision is unreasonable. The title is:

"An ordinance relating to weighing, measuring and inspecting all commodities sold or offered for sale by weight or measure within the city of Seattle; to enforce the keeping of proper legal weights and measures by all vendors in the city; to provide for the inspection thereof, inspection fees therefor, and the issuance of licenses therefor; and providing penalties for violation thereof."

The attacked provision is found in § 11 of Ordinance No. 26,018, and reads as follows:

"That from and after March 31, 1911, it shall be unlawful for any vendor in the city of Seattle, or his agent, clerk, or other employee, to sell, offer for sale or have in his possession with the intent to sell in original packages, boxes, crates, bottles, cartons, cases, bags, sacks or other receptacles, any commodity ordinarily or usually sold or offered for sale in bulk or otherwise, by weight or measure, unless the true net weight or measure of the commodity so contained shall be plainly and legibly stamped or printed on the face of each such package, box, crate, bottle, carton, case, bag, sack or other receptacle, and unless the commodity so sold or offered for sale is actually sold or offered for sale as of such true net weight or measure."

It is contended by the city that its authority to pass an ordinance of this character is given, first, in the general delegation of police powers to cities of the first class as found in subd. 36 of § 7507, Rem. & Bal. Code, "to make all regulations necessary for the preservation of public morality, health, peace, and good order within its limits;" and second, in subd. 16 of the same section, conferring power "to establish and regulate markets, and to provide for the weighing, measuring, and inspection of all articles of food and drink offered for sale thereat, or at any other place within its limits, by proper penalties and to enforce the keeping of proper legal weights and measures by all venders in such city, and to provide for the inspection thereof." These provisions have both been incorporated into the city charter in language identical with that contained in the general statute, except that the provisions of subd. 16 is enlarged to include the erection and maintenance of city scales, the weighing thereon of such commodities as the city may designate, and requiring the delivery of an official certificate of such weight. It is apparent from the title of the ordinance that its purpose is to prevent fraud in the securing of honest weights and measures. That laws providing for the detection and prevention of imposition

and fraud upon the people in the sale and purchase of food and other commodities of general and necessary use are as much within the general police power as the regulation of public health, safety and welfare, seems to us too well established to be doubted. *People v. Wagner*, 86 Mich. 594, 49 N. W. 609, 24 Am. St. 141, 13 L. R. A. 286; *Chicago v. Schmidinger*, 243 Ill. 167, 90 N. E. 369; *State v. McCool*, 83 Kan. 428, 111 Pac. 477; *Chicago v. Bartels*, 146 Ill. App. 180; *O'Maley v. Freeport*, 96 Pa. St. 24, 42 Am. Rep. 527.

The power to legislate upon all subjects affecting the interests of a whole community must be conceded to exist by whatever name that power may be called. *Munn v. People*, 69 Ill. 80.

In *Freadrich v. State*, 89 Neb. 343, 131 N. W. 618, 34 L. R. A. (N. S.) 650, a conviction was sustained for selling a pail of lard not having the net weight of the contents, exclusive of the container, stated on the outside of the pail, under the requirements of the Nebraska pure food law, and the law was upheld as within the police power. A similar ruling was made in *State v. Co-operative Store Co.*, 123 Tenn. 399, 131 S. W. 867, sustaining an indictment for selling corn meal in packages containing less than the weight required by statute; the court saying that the prevention of fraud in the enactment of such statutes has always been recognized as well within the police power. Many cases are here cited to the effect that legislation for the prevention of deception and fraud in weights and measures, especially in the sale of food and other essentials of life, is well within the police power. Freund, Police Power, § 272, in referring to the protection against deception and fraud afforded by the police power, says:

"The police power attempts to give an ampler protection both by adopting precautionary measures and by forbidding certain practices irrespective of an actual intent to defraud. It does not in the first instance punish fraud, but prescribes regulations and punishes their violation. The intervention of the law proceeds upon the theory that every one who invites

the confidence of the public may be compelled to submit to such regulations as will guard the public as far as possible against misapprehension."

Tiedeman's Limitations of Police Power, in § 89, states the same rule. Respondent does not question but that the ordinance is within the police power of the state; but his main argument is that any portion of this power delegated to the city is by implication only and not an express delegation. If it be conceded that the state has the power to pass a law of this character, we cannot see how the conclusion can be escaped that cities of the first class have that power. Under our constitution, art. 11, § 10, such cities are permitted to frame their own charters consistent with and subject to the constitution and laws of the state. Section 11 of the same article of the constitution provides:

"Any county, city, town or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

These sections delegate the police power of the state to cities of the first class, restricting the exercise of the power to conformity with the constitution and general laws of the state. If it be admitted then that the passage of this ordinance is within the police power of the state, it must also be admitted that it is within the police power of the city, unless it can be said to be in conflict with some general law, and no conflict is suggested. We have then the conferring of the power by the state in its constitution and statutes, and the acceptance and assertion of the power by the city in its charter. The objection that the ordinance is not justified and cannot be sustained as a valid exercise of the police power must then fail. *Shepard v. Seattle*, 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 647; *Tacoma v. Boutelle*, 61 Wash. 434, 112 Pac. 661.

Another objection by respondent is that, if the power be held to exist under the general grant of police power, subd. 16 of § 7507, as incorporated in the city charter, is a special

power "to establish and regulate markets and to provide for the weighing, measuring and inspection of all articles of food and drink," and the extent of the power is to be found in the specific enumeration of the power rather than in the general power. In other words, that the general grant is restricted and limited by the special enumeration, and since the power to compel the net weight to be stamped upon containers is not included within the specific enumeration, it does not exist by expression, nor is it included by implication.

It will, of course, be admitted that, if the power can be fairly implied as incident to power expressly granted, or as an essential to its accomplishment, it must be held to be included. The purpose of these provisions being to prevent fraud and deception, the state, in delegating to the city the power to regulate the weighing, and measuring and inspection of food products, must have had in mind that the city would exercise that power in such a way as to reach the object sought, and that in addition to weighing and measuring, it might provide regulations essential to the accomplishment of the purpose that could be necessarily or fairly implied in regulating weights and measures. If the city has power to regulate weights and measures, it has the power to provide what that regulation shall be, how the true weight and measure shall be ascertained; and it is going but a step further to say how it shall be made known or disclosed to the consumer. The power to require the true weight or measure to be stated on the container is, it seems to us, so fairly implied in and incident to the power to regulate that it must be held to exist.

In *Sylvester Coal Co. v. St. Louis,* 130 Mo. 323, 32 S. W. 649, 51 Am. St. 566, it was held that an ordinance requiring coal dealers to furnish to consumers certificates showing official weights of the coal sold, which certificates the dealers were required to purchase from the city, was valid under the power to provide for the inspection and weighing of coal and the regulation of standard weights, the court reasoning that

the purpose of the ordinance was plainly the protection of the citizen from imposition and fraud by false weights; and the requirement of the ordinance was a necessary incident to that purpose. In *St. Charles v. Elsner*, 155 Mo. 671, 56 S. W. 291, power to provide for the public weighing of coal was held to include the power to maintain public scales and fixing the scale of prices for such weighing. In *State v. Namias*, 49 La. Ann. 618, 21 South. 852, 62 Am. St. 657, the power to locate public markets is said to imply the power to prohibit sales of food for daily consumption at other places. In *Scudder v. Hinshaw*, 134 Ind. 56, 33 N. E. 791, the power to license hacks was sustained as a necessary incident to the power to regulate the use of the public streets. The power to remove or confine persons suffering from infectious and pestilential diseases is held by implication to authorize the renting and leasing of a house in which to confine smallpox patients. *City of Anderson v. O'Conner*, 98 Ind. 168. Authorizing cities to contract for lighting and a supply of water by implication confers authority to employ the usual and necessary means to put in motion the power granted. *State ex rel. Miller v. Missouri, K. & T. R. Co.*, 164 Mo. 208, 64 S. W. 187. The power to levy and collect taxes conferred on cities is held by necessary implication to authorize a provision that, if the taxes were not paid, the property should be sold and conveyed by the city, and that deeds so executed shall be *prima facie* evidence of the regularity of all proceedings. *Howe v. Barto*, 12 Wash. 627, 41 Pac. 908. In *Davison v. Walla Walla*, 52 Wash. 453, 100 Pac. 981, 132 Am. St. 983, 21 L. R. A. (N. S.) 454, under a charter provision authorizing the city to prohibit within fire limits the erection of any wooden buildings, the power of the city to prohibit the repair of any wooden buildings damaged by fire to the extent of thirty per cent of their value, was sustained.

These are not exceptional cases. Many other like rulings might be cited to the effect that what the law will imply as

a necessary incident is as much within a legislative enactment, whether state or municipal, as though specifically set forth in terms. And it is not a departure from such a rule to say that a requirement to stamp the net weight on a container is implied from the power to regulate weights. It is a regulation and one of the most effective in so regulating weights and measures as to reduce the opportunities for fraud and deception to the consumer to a minimum. This also disposes of the contention that the provisions of § 11 are outside the title of the ordinance. It only need be added on this point that, being incident to the special power conferred and implied from the language conferring the special power, as used in the title of the ordinance, it is germane thereto, and hence, under many of our decisions holding this to be the test, it is sufficiently embraced within the title.

The next contention of respondent goes to the reasonableness of the ordinance in failing to make allowances for the loss of weight by evaporation, stating in support of his theory that California salt packed in sacks, and raisins packed in cartons, the two commodities embraced in the complaint, will lose weight by evaporation, and that the true weight if stated on the container at the time of packing would not be the true weight at the time of delivery to the consumer, and hence the dealer would be liable for a violation of the Federal act requiring that, if the weight be stamped on the package, it must be the true weight. This would mean, assuming respondent's contention as to loss of weight by evaporation to be true, that the loss must fall on the consumer. It does not appear to us that a law is unreasonable because compliance with its requirements shifts this loss to the original packer or manufacturer. It is not unreasonable to require that the packer or manufacturer shall ascertain this loss by evaporation as he is best in position to do, and overcome the loss by increasing the size of the package or the weight of the commodity packed therein, or withhold his goods from the market until it is possible to ascertain the

true net weight. Whatever may be the necessary course to adopt to enable the container to correctly indicate the weight of the commodity it contains, it is not unreasonable to place that burden upon the one who puts the article before the public as a sale commodity, and compel him, if he wishes to retain his trade, to so pack his commodities that the consumer may know the true quantity of the thing he buys, and thus protect himself in paying the value of the thing he buys. At all events we apprehend that there will be little likelihood of the honest merchant subjecting himself to a penalty under this ordinance if he is able to show that, in an honest endeavor to comply therewith, the nature of the article is such that an absolute compliance with its terms is impossible. The power of the city to pass the ordinance being sustained, it will be a simple matter to so amend it, if found to be necessary, as to conform to all natural and uncontrollable conditions.

The judgment is reversed.

CROW, C. J., FULLERTON, MOUNT, and ELLIS, JJ., concur.